UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose Luis AYALA, aka Jose Ayala–Giron;
aka Jose Luis Ayalay; aka Oscar Jiron;
aka Jose Linares; aka Luis Esquivel,
Defendant–Appellant.

No. 93–50771.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted August 4, 1994.

Decided Sept. 9, 1994.

Joan P. Freeman, Deputy Federal Public Defender, Santa Ana, CA, for defendant-appellant.

Carmen R. Luege, Asst. U.S. Atty., Santa Ana, CA, for plaintiff-appellee.

Before: BROWNING, FARRIS and LEAVY, Circuit Judges.

FARRIS, Circuit Judge:

Jose Luis Ayala appeals his conviction and sentence for illegal re-entry into the United States after five prior deportations and four prior convictions for aggravated felonies in violation of 8 U.S.C. § 1326(b)(2). We have jurisdiction pursuant to 28 U.S.C. § 1291.

## FACTS

Ayala was charged with one count of illegal re-entry into the United States after five prior deportations (in 1987, 1989, 1991 and 1992) and four prior convictions for aggravated felonies. Prior to his 1989, 1991 and 1992 deportations, Ayala received and signed a warning letter known as INS Form I–294. Form I–294 warned Ayala that he faced imprisonment of "not more than two years" if he returned to the United States without permission. Form I–294 was inaccurate because as of 1988, the maximum sentence for illegal re-entry had been increased to fifteen years for aliens whose deportation was subsequent to a conviction for commission of an aggravated felony. *See* 8 U.S.C. § 1326(b)(2). Ayala conditionally pled guilty and was sentenced to 77 months in prison. He now appeals his conviction and sentence.

## DISCUSSION

### I. Form I–294

Ayala argues that because the contents of Form I–294 were inaccurate, due process requires that his sentence be limited to a maximum of 24 months. We recently rejected an identical argument in *United States v. Ullyses–Salazar*, 28 F.3d 932, 935–36 (9th Cir.1994). Ayala also contends that the district court erred in refusing to depart downward based upon principles of imperfect estoppel. That argument was also rejected in *Ullyses–Salazar. See id.*, 28 F.3d at 936–38.

### II. Constitutionality of § 1326(a)

Section 1326(a) provides that

any alien who (1) has been arrested and deported or excluded and deported, and thereafter (2) enters, attempts to enter, *or is at any time found in,* the United States ... [without the consent of the Attorney General] shall be fined ... or imprisoned ... or both.

8 U.S.C. § 1326(a) (emphasis added). Ayala argues that the district court should have dismissed the indictment on the grounds that (1) § 1326(a) is unconstitutionally vague, (2) § 1326(a) is unconstitutional because it punishes a status offense, and (3) the indictment failed to allege that he intended to violate the law. We review the denial of a motion to dismiss an indictment on due process grounds de novo. *United States v. Williams*, 791 F.2d 1383, 1386 (9th Cir.), *cert. denied*, 479 U.S. 869, 107 S.Ct. 233, 93 L.Ed.2d 159 (1986).

#### A. Vagueness

A statute is void for vagueness if it "(1) does not define the conduct it prohibits with sufficient definitiveness and (2) does not establish minimal guidelines to govern law enforcement." *United States v. Davis*, 15 F.3d 902, 911 (9th Cir.1994) (citing *Kolender*

*v. Lawson*, 461 U.S. 352, 358, 103 S.Ct. 1855, 1858–59, 75 L.Ed.2d 903 (1983)). The statute must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). Only if people of "common intelligence must necessarily guess at [the statute's] meaning and differ as to its application" will a statute be invalidated. *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).

█ Ayala relies primarily on dicta in *United States v. Canals–Jimenez*, 943 F.2d 1284 (11th Cir.1991). After having resolved the case on other grounds,[1] the court in *Canals–Jimenez* discussed whether the "found in" language in § 1326 could be considered unconstitutionally vague. It reasoned that "the crime of being 'found in' the United States is not actually committed by the defendant, but is created by the government at the time of apprehension ... [and that § 1326] does not provide any guidance as to how a party must curtail his conduct so as to comport with the requirements of the statute because it is not his conduct which creates criminal liability." *Id.* at 1289. The court recognized, however, that "a plausible argument can be made that the statute does advise a defendant as to what conduct by that defendant will avoid commission of the crime. He could leave the United States." *Id.*

We are not persuaded that § 1326 contains any ambiguity at all. The plain meaning of § 1326 can easily be understood by a person of "ordinary intelligence." It prohibits a deported alien from re-entering the United States without permission. To avoid being "found in" the United States, a deported alien can either not re-enter the United States or, if he has already re-entered the

United States, he can leave. We join the second and tenth circuits in holding that § 1326 is not unconstitutionally vague. *See United States v. Meraz–Valeta*, 26 F.3d 992 (10th Cir.1994); *United States v. Whittaker*, 999 F.2d 38, 42 (2d Cir.1993).

█ Ayala also contends that § 1326 is void as applied to him because INS Form I–294 did not specifically warn him that being "found in" the United States after deportation was a violation of § 1326. The argument lacks merit. Form I–294 specifically states that "by law ... any deported person who within five years returns without permission is guilty of a felony." It provided an adequate warning that being "found in" the United States constituted a felony. More importantly, even if the warning on Form I–294 was inadequate, the proper inquiry is whether the controlling statute, i.e. § 1326, is vague. *See Ullyses–Salazar*, 28 F.3d at 936 (holding that vagueness inquiry is limited to "whether the terms of the statute itself are vague" and that vagueness doctrine does not extend to incorrect information contained on Form I–294).

### B. Status Crimes

█ Ayala argues that the "found in" provision of § 1326 impermissibly punishes aliens for their "status" of being found in the United States. We reject the argument.

Ayala's reliance on two Supreme Court decisions, *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) and *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), is misplaced. In *Robinson*, the Court held that a statute that criminalized the status of being addicted to narcotics, "even though [the defendant] ... never touched any narcotic drug within the State or [had] been guilty of any irregular behavior there," violated the Eighth Amendment. 370 U.S. at 667, 82 S.Ct. at 1420–21.

---

1. In *Canals–Jimenez*, the defendant was arrested at the Miami airport shortly after arriving from the Dominican Republic. He was charged with violating § 1326 for being "found in" the United States. Defendant contended that § 1326 did not apply because he was travelling directly to Montreal from Miami (no airline offered non-stop service to Montreal from the Dominican Republic). The court held that the "found in"

language in § 1326 "applies only to situations in which an alien is discovered in the United States after entering the country surreptitiously by bypassing recognized immigration ports of entry." *Id.* at 1288. Because the defendant had not entered the U.S. surreptitiously, the court reversed the conviction on insufficiency of the evidence grounds.

The Supreme Court has subsequently limited the applicability of *Robinson* to crimes that do not involve an actus reus:

> The entire thrust of *Robinson's* interpretation of the [Eighth Amendment] is that criminal penalties may be inflicted only if the accused has committed some act, has engaged in some behavior, which society has an interest in preventing, or perhaps in historical common law terms, has committed some *actus reus*.

*Powell v. Texas,* 392 U.S. 514, 533, 88 S.Ct. 2145, 2154, 20 L.Ed.2d 1254 (1968) (plurality opinion of Marshall, J.) (upholding statute criminalizing being drunk while in public); *see also id.* at 544, 88 S.Ct. at 2160. (Black, J., concurring); *United States v. Kidder,* 869 F.2d 1328, 1332 (9th Cir.1989) (quoting above passage from *Powell* ). A conviction under § 1326 for being "found in" the United States necessarily requires that a defendant commit an act: he must re-enter the United States without permission within five years after being deported.

*Lambert* involved a municipal ordinance that made it a criminal offense for a person having a previous felony conviction to be present in Los Angeles without registering with police. 355 U.S. at 227, 78 S.Ct. at 242. The Court held that due process required "actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply." *Id.* at 229, 78 S.Ct. at 243. Ayala's reliance on *Lambert* is misplaced because it is undisputed that Ayala knew it was illegal to re-enter the United States after his deportation. Even INS Form I–294 made that clear.

### C. Intent Requirement

■ Ayala's final argument is that the indictment should have been dismissed because it failed to allege that he intended to violate the law when he re-entered the United States. In *Pena–Cabanillas v. United States,* 394 F.2d 785, 788–89 (9th Cir.1968), we held that the government does not need to allege specific intent under 8 U.S.C. § 1326. *See also United States v. Ramos–Quirarte,* 935 F.2d 162, 163 (9th Cir.1991) (specific intent is not an element of a § 1326 offense). Thus, it is irrelevant whether Ayala intended to violate § 1326; all that is necessary is that Ayala entered the United States voluntarily. *See Pena–Cabanillas,* 394 F.2d at 790. Ayala can not contend that his re-entry to and subsequent presence in the United States were involuntary.

Ayala acknowledges that our decision in *Pena–Cabanillas* does not support his position. He argues, however, that we should revisit the intent requirements of § 1326 because the enhanced penalties in § 1326(b) (adopted in 1988) have shed the statute of its regulatory purpose and made it a distinctly penal statute. We reject the argument. The 1988 amendments to § 1326 did not change the intent requirements of the statute; they simply enhanced the penalties for aliens who violate § 1326(a) and have prior felony records. *Pena–Cabanillas* controls.

AFFIRMED.